IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SMARTSCRIPTS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-1641 |
| | § | |
| HEALTH MART ATLAS, LLC | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff SMARTSCRIPTS, LLC ("SmartScripts"), through undersigned counsel, sues Defendant HEALTH MART ATLAS, LLC ("HMA") and alleges:

## PARTIES

1. Plaintiff SmartScripts is a limited liability company organized and existing under Iowa law with its principal place of business in Washington, Iowa.

2. Defendant HMA is a limited liability company organized and existing under the laws of Delaware. HMA conducts substantial business throughout the United States including in Texas. Upon information and belief, HMA is wholly owned by McKesson Corporation, a Delaware corporation with its principal place of business in Irving, Texas.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under diversity of citizenship pursuant to 28 U.S.C. §1332 because Plaintiff SmartScripts is a resident of the State of Iowa, and upon information and belief, Defendant HMA is a resident of the State of Texas, and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c).

**GENERAL ALLEGATIONS**

6. SmartScripts is a licensed independent pharmacy located in Iowa.

7. Defendant HMA is a Pharmacy Services Administrative Organization ("PSAO"). A PSAO is a cooperative network for independent pharmacies providing them access to HMA's national pharmacy networks. HMA's services allows its network of retail community pharmacies, like SmartScripts, to provide pharmacy services to customers who are covered under various plans of insurance.

8. Specifically, HMA contracts with its pharmacies to negotiate network contracts and perform other administrative services. HMA acts an in intermediary between the community pharmacies like SmartScripts and pharmacy benefit mangers ("PBMs"). The PBMs manage prescriptions on behalf of the insurance companies.

9. On October 22, 2019, HMA entered into a Pharmacy Participation Agreement with SmartScripts (the "Pharmacy Agreement", attached as Exhibit "A"). The Pharmacy Agreement authorized SmartScripts to participate as a Participating Pharmacy (as defined in the Pharmacy Agreement) in one or more pharmacy networks established by HMA.

10. Pursuant to the Pharmacy Agreement and HMA's various relationships with health insurers, pharmacy benefit managers and other payors (collectively, "Payors"), certain Payors elected to pay SmartScripts directly for its dispensed items and services, and other Payors elected to pay HMA on behalf of SmartScripts, with HMA then being obligated to pass along those earmarked Payor monies to SmartScripts (referred to in the Pharmacy Agreement as the "Consolidated Reimbursement Program").

11. During the course of the parties' relationship, SmartScripts submitted various claims related to Covid-19 test kits to HMA, including claims submitted to HMA during 2023 that

were processed under the Consolidated Reimbursement Program, which claims were paid by the Payors to HMA for SmartScripts' benefit. These included Covid-19 test kits for residents of Texas. Pursuant to the terms of the Pharmacy Agreement, SmartScripts was required to remit these funds within two (2) banking days of receipt.

12. Specifically, Section 6.1(b) of the Pharmacy Agreement provides, in pertinent part:

> With respect to funds received by HEALTH MART ATLAS under the Consolidated Reimbursement Program, HEALTH MART ATLAS will make reasonable efforts ***to pay PHARMACY within two (2) banking days*** of HEALTH MART ATLAS (i) receiving sufficient funds from Payor for payment of the Covered Pharmacy Services provided under the Payor Agreement (the "Funds"); and (ii) receiving data in a form and substance sufficient to permit HEALTH MART ATLAS to pay the Funds properly to the Participating Pharmacies entitled to receipt.

13. HMA failed to release the funds it received from the Payors that were due to SmartScripts within two (2) banking days of receipt. Despite demand, HMA has wrongfully refused to release the subject funds to SmartScripts in violation of the Pharmacy Agreement. HMA is presently withholding in excess of $16,500,000 in reimbursements that were received by HMA from Payors in connection with SmartScripts' submitted claims for Covid-19 test kits, and that are now past due and owing to SmartScripts. This includes amounts primarily paid to HMA by CVS Caremark ("Caremark"), and may include amounts paid to HMA by other Payors.

14. All funds regarding the subject Covid-19 test kits claims have been paid by the Payors and HMA has received sufficient data to pay those Funds to SmartScripts, including invoices evidencing SmartScripts' purchase of the Covid test kits from its fulfillment partner, Tiero, LLC. Despite the foregoing, in clear breach of the Pharmacy Agreement, HMA has wrongfully refused to release the Funds.

15. Despite repeated inquiry, HMA failed to provide any basis for wrongfully withholding these funds. The only information HMA provided to SmartScripts regarding its

refusal to release the Funds was a statement by Tracy Geiger, a Supervisor, Performance Advisor Team for HMA in an email dated April 28, 2023, wherein Ms. Geiger indicated that the subject claims "are at risk of having reimbursement reversed" from HMA's payment to its pharmacy network due to a possible future determination by Caremark without any further detail. Ms. Geiger further acknowledged on behalf of HMA that Caremark had not undertaken any audit, but asserted, that HMA was "at risk" in the event any audit was undertaken in the future by Caremark.

16. The Pharmacy Agreement does not permit HMA to withhold funds based upon a self-asserted statement that the claims are "at risk" of a reversal. Rather, Section 6.1(c) provides that if a claim is "reasonably anticipated by" HMA "to become subject to a negative charge, recoupment, true-up or other fee or claw back from a Payor, it may withhold funds."

17. The $16.5 million at issue had been improperly withheld dating back three months, to mid-April 2023. These funds should have been disbursed within two (2) banking days after HMA's receipt. Almost three months have passed since Ms. Geiger's April 2023 email and Caremark has ***not*** instituted any such audit or made any claims regarding the payments it made regarding the subject test kits.

18. The Pharmacy Agreement does not permit HMA to withhold SmartScripts' funds for an indefinite period based solely upon a self-perceived potential "risk" that an event *might* occur within an undefined time frame. HMA's self-perception of a "risk", without any actual claim or audit by Caremark is not a "negative charge, recoupment or fee sought by a Payor" that could possibly permit a holdback under the Pharmacy Agreement and is unreasonable.

19. Further, the amount of funds withheld bears no reasonable proportion to the alleged perceived "risk". HMA has not placed any dollar value on this alleged risk and is withholding *all* $16.5 million which should have been released in April 2023 over this hypothetical risk in an

unstated amount. Further, the alleged theoretical possibility that Caremark might initiate a future audit or seek to reverse reimbursements in the future has absolutely no bearing whatsoever on the Covid-19 test kit reimbursements that HMA received from **other** Payors, and that HMA has been improperly withholding from SmartScripts, alongside the improperly withheld Caremark reimbursements.

20. HMA's wrongful actions are devastating to SmartScripts and will likely cause SmartScripts to cease operations in the very near future as it is unable to pay its operating expenses without receipt of the subject funds, thus causing irreparable harm.

21. Despite demand, including a demand letter sent by SmartScripts on July 5, 2023, HMA has refused and/or failed to release the subject funds, or any portion thereof, to Smart Scripts. In response, HMA terminated the Pharmacy Agreement with SmartScripts effective August 15, 2023 in retaliation to SmartScripts' inquiry and demand, while continuing to withhold over $16.5 million.[1]

22. On July 24, 2023, HMA responded to SmartScripts' demand letter dated July 5, 2023 through its counsel but failed to provide any meaningful basis to support withholding of the over $16.5 million in funds. The letter makes a reference to an alleged high number of Covid 19 test kits ordered in April to June 2023, without any further basis to justify why a mere increase in insureds requesting test kits justified withholding $16.5 million. Further, the fact that HMA references test kits ordered in May and June 2023 as a basis to withhold the funds reveals that this

---

[1] On July 14, 2023, HMA advised SmartScripts that it had identified an alleged "additional" $790,000 related to Covid 19 test paid for by Caremark as a result of "a final review of all COVID test reimbursements received from Caremark." On July 24, 2023, HMA acknowledged that it receive payment of this "additional" amount though a chargeback to other unrelated SmartScripts claims that were due to be paid. Plaintiff disputes that these additional amounts were properly charged back or that the initial claims were not properly submitted. Notwithstanding the foregoing, HMA continues to improperly withhold the $16.5 million and has not provided any alleged dollar value or analysis justifying withholding these funds.

basis is a mere pretext, created after the fact, and after the monies at issue should have been released in April 2023.

23. Further, HMA's counsel advised that HMA was still waiting to learn whether Caremark intended to commence an audit and anticipated in the future "reaching out to Caremark to determine whether SmartScripts is the subject of any audit activity which may result in recoupment or clawback of reimbursements." HMA's response indicates a complete disregard for its obligation to remit the subject funds within two business days under the Pharmacy Agreement. It further demonstrates that HMA has taken no action to date to determine if Caremark in fact intended to commence an audit, thus revealing that no audit had been commenced and that HMA has had no basis to date to withhold the subject funds.

## COUNT I – BREACH OF CONTRACT
**(Injunctive Relief and Damages)**

24. SmartScripts realleges the allegations contained in paragraphs 1 through 23 of this Complaint.

25. As set forth herein, on October 22 2023, the Parties entered into the Pharmacy Agreement, a valid and enforceable contract.

26. SmartScripts has fully performed under the Pharmacy Agreement.

27. Pursuant to the terms of the Pharmacy Agreement, the funds received by HMA from Payors on SmartScripts' behalf must be remitted with two (2) banking days to SmartScripts.

28. As more fully set forth herein, HMA breached the Pharmacy Agreement by failing to remit over $16.5 million in funds received to SmartScripts within two (2) business days of their receipt, and in fact, having continually refused to release the funds despite demand, for over ninety (90) days, which time period continues to accrue.

29. As a direct and proximate result of HMA's breaches, SmartScripts has been damaged.

30. HMA's breaches have caused irreparable harm to SmartScripts as HMA has cut-off SmartScripts' source of income and SmartScripts is unable to pay its operating expenses which will cause it to cease operating in the near future. Further, HMA has failed to identify the dollar amount of the funds that are actually in dispute and provide a reasonable basis therefor and is wrongfully withholding funds that belong to SmartScripts that are not in dispute.

## **COUNT II – CONVERSION**

31. SmartScripts realleges the allegations contained in paragraphs 1 through 23 of this Complaint.

32. As set forth herein, HMA has wrongfully misappropriated the monies paid by payors to SmartScripts for Covid 19 tests, a separate and identifiable fund, by wrongfully, intentionally, and without just cause, asserting dominion, ownership and control over said funds in a manner that is inconsistent with SmartScript's ownership and possessory rights to its property.

33. SmartScripts owned, possessed, and/or had the right to immediate possession over the funds withheld by HMA.

34. As a result of the HMA's wrongful conversion, Plaintiff SmartScripts has been damaged, including but not limited to, the value of funds withheld.

35. As a result of the HMA's wrongful misappropriation of SmartScripts' funds, this Court should impose a constructive trust over the funds to secure Defendant HMA's payment for the damages caused.

## COUNT III - ACCOUNTING

36.     SmartScripts realleges the allegations contained in paragraphs 1 through 23 of this Complaint.

37.     SmartScripts and HMA were engaged in complex transactions, involving numerous entities, voluminous amounts of orders and significant sums of money. HMA claims that over $16.5 million is being properly withheld from SmartScripts which SmartScripts disputes.

38.     HMA has failed to provide SmartScripts with any adequate information or detail to justify its wrongful withholding of over $16.5 million.

39.     SmartScripts has no adequate remedy at law.

## ATTORNEYS' FEES

40.     As a result of Defendant HMA's breaches and failures to compensate Plaintiff SmartScripts, SmartScripts has been required to retain the services of counsel to prosecute this action.  In accordance with Texas Civil Practice and Remedies Code §38.001, SmartScripts is entitled to recover its costs, expenses, and attorneys' fees incurred in seeking recovery of the amounts owed to SmartScripts by HMA.

## CONDITIONS PRECEDENT

41.     All conditions precedent to the maintenance of this action have occurred, been performed, or been waived.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SmartScripts respectfully requests HMA be cited to appear and answer, and that that this Court grant SmartScripts the following relief:

(a)     Entry of a temporary injunction requiring HMA to identify the specific claims, the dollar amount of said claims, and the basis on which it is withholding the subject funds in dispute,

and requiring HMA to release any funds to SmartScripts immediately above the amount the Court determines is reasonably in dispute;

    (b)    In the alternative, entry of a temporary injunction requiring HMA to release any funds to SmartScripts immediately over the amount the Court determines is reasonably in dispute and to deposit the remaining funds into the registry of the court pending resolution of this case;

    (c)    Entry of a final judgment requiring HMA to release the subject funds being wrongfully withheld to SmartScripts;

    (d)    An award of actual and consequential damages suffered by SmartScripts;

    (e)    That HMA be ordered to provide an accounting of all of its transactions with SmartScripts regarding the subject funds being withheld from SmartScripts, including all amounts HMA claims can be withheld from SmartScripts and the basis for such withholding;

    (f)    Pre-judgment and post-judgment interest;

    (g)    All taxable costs of court;

    (h)    Attorneys' fees; and

    (i)    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: _____
K. Patrick Babb
State Bar No. 24077060
E-mail: pbabb@foxrothschild.com
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, Texas 75201
(972) 991-0889
(972) 404-0516 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**